HORN WILLIAMSON LLC
By: Gene D. Cohen, Esquire
Matthew H. Dempsey, Esquire
Ryan M. Lockman, Esquire
Identification. No(s). 9935/312392/307325
Two Penn Center
1500 JFK Boulevard | Suite 1700
Philadelphia, PA 19102
Tel.: (215) 987-3800
gcohen @hornwilliamson.com
mdempsey@hornwilliamson.com
rlockman@hornwilliamson.com
*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEX COHEN AND SARA COHEN, h/w | : |
| Plaintiffs, | : Civ. A. 2:21-cv-04172 |
| v. | : JURY TRIAL DEMANDED |
| USAA CASUALTY INSURANCE COMPANY, | : |
| Defendants. | : |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Alex and Sara Cohen h/w through the undersigned counsel, hereby submit this Amended Complaint as follows:

**THE PARTIES**

1. Plaintiffs, Alex Cohen and Sara Cohen, husband and wife (hereinafter "Plaintiffs") are adult individuals who, at all relevant times, resided at and own 1714 Christian Street, Philadelphia, PA 19146.

1

2

2.	Defendant, USAA Casualty Insurance Company, hereinafter "USAA" is a corporation doing business in Pennsylvania as property casualty insurance with a principal place of business at 9800 Fredericksburg Road, San Antonio, TX 78288.

3.	Plaintiffs purchased premises 1714 Christian Street in the City of Philadelphia on or about December 2004 and have occupied said premises along with their two children in quiet enjoyment since that date up until March 2021 when their home suffered sudden and severe damage including a partial collapse of its east party walls a result of tortious conduct and negligent demolition of the adjacent premises at 1712 Christian Street, Philadelphia.

4.	As a result of the dangerous conditions created by the activity next door Plaintiffs and their children were forced to hastily evacuate their home and have been residing in a temporary rental.

5.	Plaintiffs purchased a Homeowners Insurance Policy under policy number 009014145 having legacy qualification for defendant's coverage requirements ("Policy"). A copy of the Policy is included as Exhibit A.

6.	The Policy states plaintiffs have additional coverage for "collapse."

7.	Collapse, as defined in the Policy incudes "a sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use." *See* Exhibit A at Policy page 1 of 34, Definitions No. 5(b).

8.	The Policy provides, "we insure for direct physical loss to covered property involving 'collapse' of a building or any part of a building only when the 'collapse' is caused by one or more of the following . . . defective [ ] methods in construction . . . if the 'collapse' occurs during the course of construction." *See* Exhibit A at Policy Page 10 of 34, Additional Coverages, Section 8(f).

9. Defendant insurance company was placed on notice of the covered loss and of the forced evacuation and assumed coverage by renting a hotel for the family and subsequently leased a house and furniture in the City of Philadelphia.

10. Defendant's insurance adjuster did not adequately investigate or describe the damage to the company.

11. Defendant sent notice to Plaintiffs' attorneys of its subrogation interest against the parties who were responsible. Plaintiffs' attorneys acknowledged the insurance company's interest and furnished the defendant's attorneys with a copy of the third-party complaint which had been filed with the Court of Common Pleas stating the cause of the damage was negligent methods in construction and breach of the Philadelphia building code.

12. The estimate for repair of the damage to Plaintiffs' home was more than $375,000.00 and the final cost will be in excess of the Policy.

13. At all times relevant hereto, all premiums due on the subject Policy had been paid and the Policy was in full force and effect.

14. When defendant became aware of the extent of the damage it sent a "forensic engineer" to the location for the apparent purpose of finding an excuse to decline coverage after previously having accepted coverage. The "forensic engineer" failed to report on the defective methods of construction, which caused the damage to the insured premises.

15. USAA did not permit its engineer to meet with Plaintiffs' engineer to compare and discuss the discrepancies in their respective reports.

16. On May 27, 2021, USAAsent Plaintiffs notice declining coverage and stated: "Reason for Denial[:] Your claim for the repair of the exterior wall and related interior structural damages as well as damages that resulted from water that seeped in through the foundation isn't

covered because the Policy excludes damages resulting from earth movement and water which seeps through the foundation. Policy Provisions The specific policy language, which is the basis for the denial, is located on: · Pages 17, Section 1, LOSSES WE DO NOT COVER, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION, 1. b. (3) and (4). · Pages 17, Section 1, LOSSES WE DO NOT COVER, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION, 1. c. (1), (2) & (4)."

17. Plaintiff's own premises 1714 Christian Steet and on the east side of the house jointly owned a party wall with the owner of premises 1712 Christian Street.

18. The jointly owned party wall was damaged and partially collapsed by the contractor's tortious, unlawful and defective methods of construction and/or demolition in removing the wall's supports prior to bracing the wall causing its further movement and partial collapse which caused more damage and endangered plaintiff's' home.

19. The actual cause of the loss can be found in the engineer's report who plaintiffs retained for fixing the party wall and not for "forensic" purposes. Plaintiffs' engineer had opined: "The movement of the party wall may be attributed in whole or in part to the following action of the contractor(s).

a. The contractor(s) did not retain a Professional Engineer to design a bracing, sheeting, shoring, and/or underpinning system, as applicable, to prevent vertical or lateral movement of the party wall during demolition and/or construction.

5

    b.    The contractor(s) proceeded with demolition without providing bracing, sheeting, shoring, and/or underpinning systems to prevent vertical or lateral movement of the party wall.

    c.    The contractor(s) removed the roof and floor diaphragms, which had been providing lateral support for the party wall, without providing adequate bracing, sheeting, shoring, and/or underpinning systems to prevent vertical or lateral movement of the party wall.

    d.    The contractor(s) excavated four to six feet of existing soil on the east side of the existing foundation wall, thereby increasing the unbraced wall height and reducing the lateral support at the base of the existing party wall.

    e.    The contractor(s) operated heavy equipment in close proximity to the existing party wall and foundation, thereby superimposing new loads on the wall, without providing adequate bracing, sheeting, shoring, or alternative lateral support.

20.    Plaintiffs on several occasions requested Defendant's expert meet with Plaintiffs' engineer to further investigate the causes of the damage and defendant did not respond.

21.    Plaintiffs sent their engineers report to USAA which ignored the report and repeated its decline of coverage.

22.    Defendant refused to negotiate with plaintiffs.

23.    Defendant ignored the law of the Commonwealth of Pennsylvania dealing with concurrent causes of loss.

24.    Defendant ignored the fact that the subject premises was damaged by a blatant violation of the Philadelphia building code. Subcode B Chapter 3307.

25. Defendant failed to explain its continued declination after receiving plaintiffs' engineering report which detailed the cause of the loss and why this collapse was not covered.

26. Defendant's unreasonable conduct in the handling of this claim has added to the Plaintiffs' emotional distress by failing to support their lack of housing already inflicted by the builder's tortious conduct especially Plaintiff Alex Cohen who is blind.

27. Plaintiff's licensed insurance adjuster tried on several occasions to contact USAA's assigned adjuster who was non-responsive to requests for meetings.

**COUNT I**
**ALEX AND SARA COHEN v. USAA**
**BAD FAITH 42 Pa. CSA § 8371, et seq.**

28. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

29. Defendant's conduct above, including its untimely, unreasonable and/or inappropriate investigation, its baseless claim denial and corresponding refusal to honor its contractual obligation to Plaintiffs and its gross failures to properly communicate its basis for its denial and payment refusal, constitute bad faith under the circumstances pursuant to 42 Pa. CSA § 8371, et seq..

**WHEREFORE**, plaintiffs demand judgment in their favor and against defendant, for compensatory damages, punitive damages, costs, attorney fees and interest pursuant to 42 Pa. CSA § 8371, et seq. in an amount exceeding the limits of said insurance policy, plus costs and expenditures, sums, delay damages, pre-and post- judgment interest, and any further relief as is just and appropriate.

**COUNT II**
**ALEX AND SARA COHEN V. USAA**
**Violation of Pennsylvania's Unfair Trade Practices and**
**Consumer Protection Law, 73 P.S. § 201-1 et seq. (the "UTPCPL")**

30. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

ACTIVE\02475\0001\583506.v1-8/23/21

31. The Homeowners Insurance Policy which is the subject of this matter was sold to plaintiffs is within the purview of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. (the "UTPCPL").

32. This Policy was in effect at the time plaintiffs' home was damaged.

33. Plaintiffs purchased their home for personal, household, and family use.

34. Plaintiffs are persons within the meaning of 73 P.S. § 201-2(2) who purchased goods or services from Defendants for personal use.

35. USAA's role in advertising, marketing, and selling the Homeowners to Plaintiffs constitutes trade or commerce within the meaning of 73 P.S. § 201-2(3).

36. Defendant insurance company entitled the Policy which was issued "PREFERRED PROTECTION PLAN."

37. Plaintiffs relied on the representation they were receiving a preferred protection plan.

38. There was nothing "Preferred" in the protection plan.

39. As aforesaid, USAA preferred to choose a pretext to exclude coverage with an ambiguous exclusion when there indeed was coverage.

40. USAA advertised, sold, and distributed goods and services and engaged in deceptive conduct which created a likelihood of confusion or misunderstanding during a transaction.

41. The conduct of USAA is in violation Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201-2(4)(xxi).

42. Plaintiffs have sustained damage and will continue to sustain damage because of the aforesaid violations

WHEREFORE, Plaintiffs Alex and Sara Cohen respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendant, USAA Casualty Insurance Company in an amount in excess of $50,000.00, plus pre-judgment interest, post-judgment interest, treble damages as provided by 73 P.S. § 201-9.2(a), attorney's fees, costs of suit, and any other relief this Honorable Court deems just and proper.

### COUNT III
### ALEX AND SARA COHEN v. USAA
### BREACH OF CONTRACT

20. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

21. A valid contract existed between Plaintiffs and Defendant.

22. Defendant owed a duty to Plaintiffs to, *inter alia*, reasonably and promptly investigate all insurance claims, provide a basis for any decision regarding any insurance claims, and provide financial protection against damages, pursuant to the terms of said contract.

23. In exchange, Plaintiffs owed – and paid – consideration to Defendants, in the form of periodic premium payments.

24. Defendant's conduct above breached the terms of the contract between Plaintiffs and Defendant.

**WHEREFORE**, plaintiffs demand judgment in their favor and against defendant, for compensatory damages, plus costs and expenditures, sums, delay damages, pre-and post- judgment interest, and any further relief as is just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury on all counts triable.

                Respectfully submitted,

                **HORN WILLIAMSON LLC**

                BY: */s/ Matthew H. Dempsey*
                GENE D. COHEN
Dated: October 11, 2021      MATTHEW H. DEMPSEY
                RYAN M. LOCKMAN
                *Attorneys for Plaintiffs*

ACTIVE\02475\0001\583506.v1-8/23/21

## CERTIFICATE OF SERVICE

I, Matthew H. Dempsey, hereby certify that the foregoing Amended Complaint was served upon all counsel on today's date via CM/ECF.

                Respectfully submitted,

                **HORN WILLIAMSON LLC**

        BY:   */s/ Matthew H. Dempsey*
                GENE D. COHEN
Dated: October 11, 2021        MATTHEW H. DEMPSEY
                RYAN M. LOCKMAN
                *Attorneys for Plaintiffs*

ACTIVE\02475\0001\583506.v1-8/23/21