IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEX COHEN AND SARA COHEN, H/W | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| USAA CASUALTY INSURANCE | : | |
| COMPANY | : | NO.  21-4172 |

**MEMORANDUM**

**Padova, J.**                                                              **February 13, 2024**

Plaintiffs filed this action against Defendant USAA Casualty Insurance Company ("USAA") asserting causes of action for insurance bad faith (Count I) and breach of contract (Count III) arising from USAA's denial of their claim for insurance coverage under a homeowner's insurance policy they purchased from USAA.  Plaintiffs also assert a claim arising from USAA's allegedly deceptive conduct in the sale of that insurance policy to Plaintiffs pursuant to the Pennsylvania Unfair Trade Practices Consumer Protection Law, 73 Pa. Stat. §§ 201-1 et seq. ("UTPCPL") (Count II).  The parties have filed cross-motions for summary judgment as to Counts I and III of the First Amended Complaint and Defendant has also moved for summary judgment as to Count II.  For the reasons which follow, we deny the cross-motions for summary judgment as to Counts I and III and grant Defendant's motion for summary judgment as to Count II.

I.      **FACTUAL BACKGROUND**

Defendant issued homeowners insurance policy number 00901 41 45 92A (the "Policy") to Plaintiff Alex Cohen, covering Plaintiffs' residence located at 1714 Christian Street, Philadelphia, PA (the "Residence").  (Def.'s Ex. A at Policy 4; Pls.' Ex. A at Policy 4.[1])  The

---

[1] The references to these Exhibits are to the Exhibits attached to Docket No. 12 (Defendant's Motion for Summary Judgment) and Docket No. 39 (Plaintiffs' Exhibits in

Policy provided Dwelling Protection Coverage in the amount of $435,000.  (Id.)  The Dwelling

Protection Coverage covers "'sudden and accidental' direct physical loss to tangible property" and

"collapse."  (Id. at Policy 23, 27.)  The Policy defines "collapse" to include "[a] sudden breaking

apart or deformation such that the building or part of a building is in imminent peril of falling or

caving in and is not fit for its intended use." (Id. at Policy 48.)  The collapse coverage includes

collapse caused by the "[u]se of defective material or methods in construction, remodeling or

renovation if the 'collapse' occurs during the course of the construction, remodeling or

renovation."  (Id. at Policy 23.)

The Policy excludes coverage for the following:  "[e]arth [m]ovement arising from . . .

[s]ubsidence, sinkhole, erosion or movement resulting from improper compaction, site selection

or any other external forces;" "[e]arth sinking, rising or shifting, expanding or contracting of earth,

all whether combined with water or not[;]" and "damage caused by . . . [w]ater or water-borne

material which backs up through sewers or drains or which overflows from a sump pump . . .  or .

. . [w]ater or water-borne material below the surface of the ground, including water which exerts

pressure on or seeps through a building . . . ."  (Id. at Policy 30.)  The Policy includes an

Endorsement for "Water Backup or Sump Pump Overflow" which provides for coverage in the

amount of $10,000 for physical loss caused by "water which overflows from a sump pump . . . if

such overflow results from the mechanical breakdown of the sump pump . . . ."  (Id. at Policy 7.)

The east-southeast side of the Residence was connected by a party wall to a townhouse

located at 1712 Christian Street.  (Pls' Ex. D at 114 of 388.)  In 2021, the townhouse located at

1712 Christian Street was "demolished, including the roof and floor diaphragms which had

connection with their response to Defendant's Motion for Summary Judgment and their Cross-
Motion for Summary Judgment).

previously provided lateral support for the existing party wall." (Id. at 115 of 388.)  The contractor that did the demolition did not brace the party wall.  (Charles Patrick Dep. (Pls.' Ex. N) at 55-56.) After the demolition, the foundation of 1712 Christian Street was excavated.  (Id. at 55.)  On March 4, 2021, contractors and/or subcontractors excavating 1712 Christian Street ruptured a water main, causing water damage in the basement of the Residence from water seeping through the foundation.  (Def.'s Ex. B at Clark & Cohen 20, 50, 189; Aggabo Silva Dep. (Pls.' Ex. M) at 17.) The water main break occurred during the excavation.  (Silva Dep. at 17-18.)  Plaintiffs made a claim with respect to this water damage, and on April 9, 2021, Defendant paid Plaintiffs  $7,387.71 in connection with this clalim. (Def.'s Ex. B at Clarke & Cohen 20, 40-41.)

At some time after the start of the demolition of 1712 Christian Street and prior to March 12, 2021, the party wall between 1712 Christian Street and the Residence began to lean away from the Residence.  (Id. at Clarke & Cohen 286-87.)  As a result, the Philadelphia Department of Licenses and Inspections ("L&I") found that the Residence was "imminently dangerous."  (Pls.' Ex. O at 377-80 of 388.)  Temporary bracing was installed to support the party wall.  (Pls.' Ex. M at 16.)  On March 12, 2021, the gap between the Residence and the party wall was 1/8 inch at the base of the wall and increased to one inch at 10 feet above the sidewalk.  (Def.'s Ex. B at Clarke & Cohen 286.)  On March 12, 2021, Plaintiffs retained an engineering firm, Alta Design, to assist with the wall separation issue.  (Id. at Clarke & Cohen 284.)  On March 26, 2021, Clarke & Cohen, Plaintiffs' public adjuster, provided a letter of representation to Defendant regarding Plaintiffs' claim with respect to the party wall separation.  (Id. at Clarke & Cohen 197.)

Defendant retained Donan Engineering Co., Inc. ("Donan") to conduct a structural engineering inspection of the Residence.  (Id. at Clarke & Cohen 49.)  Kevin Kornafel of Donan, a forensic engineer, inspected the Residence on April 29, 2021.  (Id. at Clarke & Cohen 48-49.)

Richard Cohen of Clarke & Cohen was also there.  (Id. at Clarke &  Cohen 49.)  Kornafel prepared

a report (the "Donan Report") dated May 4, 2021.  (Id. at Clarke & Cohen 48-67.)  According to

the Donan Report, Richard Cohen told Kornafel that, after the water main break, several inches of

water had entered the northeast corner of the Residence basement,  (Id. at Clarke & Cohen 50.)

Kornafel observed a gap "between the brick at the north elevation and the east wall of the house .

. . ." (Id.)  Photographs taken during the inspection show missing drywall from the northeast corner

of the basement, soil between the wall studs, and soil on the basement floor, baseboard, and wall.

(Id. at Clarke & Cohen 64-66.)  Kornafel concluded that the moisture in the soil undermined the

foundation of the Residence and caused the party wall to lean.  (Id. at Clarke & Cohen 52.)

Defendant issued a reservation of rights letter with respect to Plaintiffs' claim arising from

the party wall separation on May 11, 2021 and denied this claim on May 27, 2021.  (See Pls.' Ex.

F at 155-57 of 388; Pls.' Ex. I at 343 of 388.)  Defendant stated in its denial letter that "Your claim

for the repair of the exterior wall and related interior structural damages as well as damages that

resulted from water that seeped in through the foundation isn't covered because the policy excludes

damages resulting from earth movement and water which seeps through the foundation."  (Pls.'

Ex. I at 343 of 388.)

Alta Design came to a different conclusion with respect to the cause of the party wall

separation.  The Alta Design Report states that its engineer, Timothy Brouse, first inspected the

Residence on March 12, 2021, at which time the party wall had already separated from the

Residence and the Philadelphia Department of Licenses and Inspections had declared the

Residence an "Unsafe Structure."  (Def.'s Ex. B at Clarke & Cohen 284, 291.)  Alta Design

inspected the Residence again on April 22, 2021, April 29, 2021, and May 6, 2021.  (Id.)  During

that time, the gap between the Residence and the party wall increased in width, even though

temporary wood bracing had been installed at the top of the party wall.  (Id.)  Brouse opined that

the contractor at 1712 Christian Street did not provide adequate shoring, bracing, or underpinning

to prevent movement of the party wall during demolition.  (Id. at Clarke & Cohen 290.)  He also

opined as to the cause of the party wall separation as follows:

> the damage to the party wall can be attributed primarily to the removal of the
> existing roof and floor diaphragms, without providing adequate alternative lateral
> support to prevent movement of the party wall during demolition and construction.
> Therefore, although the infiltrating water may have exacerbated the situation and
> caused additional movement, Alta Design views the damaged party wall as a
> separate incident/issue, not tied to the water main break.

(Id. at Clarke & Cohen 289.)  Defendant reviewed the Alta Design Report and sent a message to

Clarke & Cohen on August 10, 2021, stating that Defendant was still denying Plaintiff's claim.

(Id. at Clarke & Cohen 361.)

As we mentioned above, the First Amended Complaint asserts three claims for relief.

Count I seeks damages for bad faith in connection with Defendant's investigation and denial of

Plaintiffs' claim related to the party wall separation pursuant to 42 Pa. Cons. Stat. Ann. § 8371.

Count II seeks damages for violation of the UTPCPL in connection with Plaintiffs' purchase of

the Policy.  Count III asserts a claim for breach of contract in connection with Defendant's denial

of Plaintiffs' claim related to the party wall separation.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

factual dispute is "material" if it "might affect the outcome of the suit under the governing law."

Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).

Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).  However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

## III.   DISCUSSION

### A.    Breach of Contract (Count III)

Plaintiffs argue that Defendant breached their insurance contract by denying a covered claim.  A party must establish the following three elements to succeed on a claim of breach of

contract under Pennsylvania law:  "(1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[ ] (3) resultant damages.'"  Doe v. Univ. of Scis., 961 F.3d 203, 211 (3d Cir. 2020) (alterations in original) (footnote omitted) (quoting Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)).  Plaintiffs maintain that their loss arising from the party wall separation is covered under the Policy's collapse coverage, which, as we mentioned earlier, includes collapse caused by the "[u]se of defective material or methods in construction, remodeling or renovation if the 'collapse' occurs during the course of the construction, remodeling or renovation."  (Pls.' Ex. A at Policy 23.)  Plaintiffs maintain that Defendant breached its obligations under the Policy's collapse coverage by denying their claim arising from the party wall separation.  Plaintiffs did not address damages in their papers.

Defendant argues that it is entitled to summary judgment as to Plaintiffs' breach of contract claim because two Policy exclusions exclude coverage for Plaintiffs' loss due to the party wall separation.  Defendant has the burden of proving the existence of a policy exclusion.  See Wilson v. USI Ins. Serv. LLC, 57 F.4th 131, 141 (3d Cir. 2023) ("To state a successful claim for coverage under an insurance policy, an insured must first make a prima facie showing that its claim falls within the policy's grant of coverage. The insurer then bears the burden to demonstrate that a policy exclusion applies."  (citing State Farm Fire & Cas. Co. v. Est. of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009)) (add'l citation omitted).  "'[E]xclusions are always strictly construed against the insurer and in favor of the insured.'"  Id. (quoting Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206-07 (3d Cir. 2001)) (add'l citation omitted)).

Defendant argues that it did not breach the Policy by denying Plaintiffs' claim for coverage related to the separation of the party wall because the party wall separation was caused, at least in

part, by water and earth movement, both of which are excluded from coverage by the Policy.  As we discussed above, the Policy excludes coverage for damage caused by "[w]ater or water-borne material . . . which overflows from a sump pump . . . or similar device designed to drain water from the foundation area," or by "[w]ater or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a . . . foundation, . . . or other structure." (Def.'s Ex. A at Policy 30.)  The Policy also excludes coverage for damage caused by "[e]arth [m]ovement arising from or caused by or resulting from human or animal forces or any act of nature," including "[s]ubsidence, sinkhole, erosion or movement resulting from . . . external forces;" and "[e]arth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not."  (Id.)

Defendant argues that the record evidence supports its determination that Plaintiffs' loss arising from the party wall separation was not covered by the Policy because there is record evidence that the party wall separation was caused, at least in part, by subsurface water and earth movement.  Specifically, Defendant relies on the Donan Report.  The Donan Report states that the contractors demolishing 1712 Christian Street ruptured a water main which caused water to infiltrate and undermine the foundation of the Residence.  (See Def.'s Ex. B at Clarke & Cohen 50-52.)  The Donan Report concludes as follows:

> [t]he soil between the wall cavities at the northeast corner and on the surfaces indicates a significant amount of moisture infiltrated into the basement.  The soil was forced through the voids in the stone foundation wall. As the moisture infiltrated into the basement, it also undermined the soil below the foundation, causing the wall to lean toward the east.

(Id. at Clarke & Cohen 52.)  There is also record evidence that on April 9, 2021, Defendant paid a sump pump coverage claim related to the rupture of the water main at 1712 Christian Street.  (See id. at Clarke & Cohen 40-41.)  Plaintiffs made this claim on March 4, 2021, one week before they

8

made their claim related to the movement of the party wall on March 11, 2021.  (Compare id. at Clarke & Cohen 20-32, 40-41 with Clarke & Cohen 120.)  Defendant also relies on the Alta Design Report, which states that "the infiltrating water may have exacerbated the situation and caused additional movement" in the party wall.  (Id. at Clarke & Cohen 289.)

Defendant maintains that this evidence establishes that it properly denied Plaintiffs' claim based on the water and soil movement exclusions, even if there is also evidence that there was a concurrent cause of the party wall separation that would otherwise not be excluded under the Policy.  Defendant relies on anti-concurrent causation language in the Policy, which states that Defendant "do[es] not insure for damage consisting of or caused directly or indirectly by any of the [excluded causes] regardless of:  . . . [w]hether other causes or events act concurrently or in any sequence with the excluded event to produce the loss."  (Def.'s Ex. A, at Policy 30.)  Anti-concurrent causation language allows an insurer to deny coverage where there is more than one cause of the loss, as long as one of those causes is excluded from coverage.  See Colella v. State Farm Fire & Cas. Co., 407 F. App'x 616, 622 (3d Cir. 2011) (determining that an exclusion for water damage applied even though there were also concurrent causes of the loss that would not be excluded if they were the sole cause of the loss, because the insurance policy included the following anti-concurrent causation language "[w]e do not insure for such loss regardless of: . . . whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . ."); see also Palek v. State Farm Fire & Cas. Co., Civ. A. No. 20-170, 2020 WL 5077461, at *6 (W.D. Pa. Aug. 26, 2020) (noting that anti-concurrent causation policy language has been found by courts "to be clear, unambiguous, and enforceable" (citation omitted)).

Plaintiffs argue that we should deny Defendant's motion for summary judgment as to Count III and grant their cross-motion for summary judgment as to Count III because the record

evidence demonstrates that the work done to demolish 1712 Christian Street without adequate bracing and shoring was the sole cause of the party wall separation, and this use of defective methods of "construction, remodeling or renovation" falls under Policy's collapse coverage.  (See Def.'s Ex. A at Policy 23.)  Plaintiffs maintain that the collapse occurred when the joists and diaphragms supporting the party wall were removed during demolition by A&C Environmental, which conducted the demolition of 1712 Christian Street.  The record evidence shows that A&C Environmental, which demolished 1712 Christian Street, did not brace the party wall when it conducted the demolition.  (See Patrick Dep. at 56.)  The demolition occurred before the excavation that caused the water main break.  (Id. at 55.)

Plaintiffs' engineering expert, Alta Design, opined that the damage to the party wall occurred during demolition.  (Pls.' Ex. D at 4 of 8.)  Specifically, Brouse opined that "the damage to the party wall can be attributed primarily to the removal of the existing roof and floor diaphragms, without providing adequate alternative lateral support to prevent movement of the party wall during demolition and construction."  (Id. at 6 of 8.)  There is also record evidence that Kornafel, the Donan engineer, revised his opinion as to the cause of the party wall separation after he received a copy of the Alta Design Report.  After Defendant sent him the Alta Design Report, Kornafel prepared a supplemental report in which he stated his belief, based on the Alta Design Report, that the water main break was not the cause of the party wall separation.  (July 1, 2021 letter from Donan to USAA ("supplemental Donan report") (Pls.' Ex. H) at 2.)  In the supplemental Donan report, Kornafel opined that the cause of the party wall separation was inadequate connection between the interior framing of the Residence and the party wall, and that "[t]he addition of temporary bracing/shoring on the outside of this wall during the demolition of 1712 Christian Street would have prevented [the party wall] movement."  (Id. at 2-3.)  However,

10

Kornafel's opinion relies, at least in part, on his assumption that Brouse first inspected the Residence before the water main break:

> In his report, Mr. Brouse notes that he was first on-site on March 12, 2021, and that the party wall was leaning at that time. If Mr. Brouse's first visit to the site predated the leak event and the wall was leaning at that time it is not possible for the leak to have caused the wall to lean since it occurred after the lean in the wall was identified.

(Id. at 2.)  However, there is record evidence that the water main break occurred on March 4, 2021, before Brouse's inspection of the Residence.  Specifically, Plaintiff's claim for loss arising from the water main break notes that the loss date was March 4, 2021.  (See Def.'s Ex. B at Clarke & Cohen 20.)  Brouse states in the Alta Design Report that he first inspected the Residence on March 12, 2021, a week after the date of Plaintiffs' loss arising from the water main break.  (See id. at 286.)  Consequently, we cannot rely on Kornafel's assumption, in the supplemental Donan report, that the party wall separation must have occurred prior to the water main break.

We find that there is record evidence that the party wall separation was caused, at least in part, by water and earth movement after the water main break.  (See Def.'s Ex. B at Clarke & Cohen 40-41, 50-52, 289).  There is also evidence that the party wall separation was caused solely by the demolition of 1712 Christian Street without bracing the party wall.  (See Pls.' Ex. D at 4, 6 of 8; Pls.' Ex. H at 2-3.)  Consequently, we conclude that there are substantial issues of material fact regarding (1) whether Plaintiffs' loss arising from the party wall separation was caused by earth and water movement and is therefore excluded by the Policy's exclusion for damage caused by water and earth movement; (2) whether Plaintiffs' loss arising from the party wall separation was caused both by earth and water movement and by a covered cause and is therefore excluded by those exclusions and the Policy's anti-concurrent causation provision; and (3) whether Plaintiffs' loss arising from the party wall separation resulted solely from a covered cause.

11

Accordingly, we deny both Defendant's motion for summary judgment and Plaintiffs' cross-motion for summary judgment as to Plaintiffs' claim for breach of contract in Count III of the First Amended Complaint.

      B.     <u>Bad Faith (Count I)</u>

Plaintiffs argue that Defendant acted in bad faith, in violation of 42 Pa. Cons. Stat. Ann. § 8371, by both denying their claim without a reasonable basis and by failing to properly investigate their claim. The Pennsylvania insurance bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. A party bringing a bad faith action under Section 8371, "must establish: '(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" <u>Reid <i>ex rel.</i> Lopez v. Selective Ins. Co.</u>, Civ. A. No. 20-1260, 2020 WL 3265148, at *1 (E.D. Pa. June 17, 2020) (quoting <u>Rancosky v. Washington Nat'l Ins. Co.</u>, 170 A.3d 364, 377 (Pa. 2017)). Plaintiff has the burden of proving these factors by clear and convincing evidence. <u>Rancosky</u>, 170 A.3d at 365. Moreover, "[a]ctionable bad faith encompasses behavior beyond the denial of a claim without a reasonable basis, including an insurer's investigation of a claim." <u>Gold v. State Farm Fire & Cas. Co.</u>, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012); <u>see also</u> <u>Hollock v. Erie Ins. Exch.</u>, 842 A.2d 409, 415 (Pa. Super. Ct. 2004) (en banc) (stating that "'[a]n action for bad faith may also extend to the insurer's investigative practices'" (alteration in original) (quoting

12

O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999))).  Thus, an insurer is required to "'properly investigate claims prior to refusing to pay the proceeds of the policy to its insured.'"  Gold, 880 F. Supp. 2d at 597 (quoting Bombar v. W. Am. Ins. Co., 932 A.2d 78, 92 (Pa. Super. Ct. 2007)).

Defendant argues that it is entitled to summary judgment with respect to Plaintiffs' claim for bad faith because it had a reasonable basis for denying Plaintiff's claim arising from the party wall separation.  See Colella, 407 F. App'x at 622 (stating that the plaintiffs could not establish the elements of a cause of action for bad faith because the insurance company had a reasonable basis for denying the plaintiffs' claim).  Specifically, Defendant maintains that the record evidence establishes that Plaintiff's claim was excluded by the Policy's water and earth movement exclusions.  Defendant relies on the first Donan Report, in which Kornafel opined that "[t]he east wall of the house is leaning as a result of the water leak at the neighboring construction. Moisture undermined the foundation of the wall and caused it to lean toward the east."  (Def.'s Ex. B at Clarke & Cohen 49.)  Defendant also relies on the Alta Design report, which states that "infiltrating water [from the water main leak] may have exacerbated the situation and caused additional movement."  (Id. at Clarke & Cohen 289.)  Defendant maintains that these reports establish that it did not know of "'or recklessly disregard[]'" a possible lack of reasonable basis when it denied Plaintiffs' claim.  Lopez, 2020 WL 3265148, at *1 (quoting Rancosky, 170 A.3d at 377).

Plaintiffs maintain that they are entitled to summary judgment with respect to their bad faith claim because Defendant acted in bad faith after it received the supplemental Donan report, in which Kornafel opined that the water main break had not been the cause of the party wall separation.  (Supplemental Donan Report at 2.)  Specifically, Plaintiffs assert that Defendant acted in bad faith by failing to reverse their denial of coverage based on the supplemental Donan report

and by failing to provide Plaintiffs with a copy of the supplemental Donan report after it was received.

The record evidence shows that, after Defendant's claim adjuster, Dale Ziegenfus, received the Alta Design Report on June 23, 2021, he forwarded a copy of that report to Donan. (Dale Ziegenfus Dep. (Pls.' Ex. B) at 69.) Ziegenfus expected Donan to prepare a supplemental report after receiving the Alta Design report. (Id.) It would have been Defendant's standard practice to send a copy of the supplemental Donan report to Plaintiffs and their representatives after Defendant received it. (Id. at 69-70.) It would also have been Defendant's standard practice to re-evaluate Plaintiffs' claim after receiving the supplemental report. (Id. at 70.) The supplemental Donan report was dated July 1, 2021. (Id. at 74.) Ziegenfus would usually note in the claims file when he received such a report. (Id. at 75.) He would also indicate in the claims file if he sent a copy of the report to Clarke & Cohen, the Plaintiffs' claims adjuster. (Id. at 77-78.) On July 6, 2021, Defendant sent a letter to Clarke & Cohen stating that Defendant had not yet received an updated report from Donan. (Id. at 79-80.) On July 14, 2021, Sara Cohen sent a letter to Defendant regarding Defendant's review of the Alta Design Report. (Id. at 81.) In response, Defendant sent a letter to Sara Cohen stating "We've requested an updated [sic] from the engineering company yesterday in an attempt to expedite the report of the review of your engineer's report. We will advise you once the report has been received and reviewed." (Id. at 81-82.) Ziegenfus does not recall ever informing Plaintiffs that Defendant had received the supplemental Donan report. (Id. at 83.) In addition, Defendant's claims file does not contain a copy of the supplemental Donan report. (Id.) Ziegenfus made the final decision to deny coverage after receiving the supplemental Donan report. (Id. at 89.) Defendant notified Plaintiffs on August 10, 2021 that it had not changed its position denying their claim. (Def.'s Ex. B at Clarke & Cohen 361.)

Plaintiffs maintain that this evidence establishes that Defendant denied their claim without a reasonable basis and acted in bad faith by failing to provide them and their insurance adjuster with a copy of the supplemental Donan report after it was received and by failing to reconsider the denial of their claim based on the supplemental Donan report.  There is evidence of record that Defendant received the supplemental Donan report, even though it was not recorded in Plaintiffs' claim file.  There is no evidence of the date on which the supplemental Donan report was received by Defendant.  There is evidence that Plaintiffs requested a copy of that report two weeks after the date of the report and that Defendant responded to that request by notifying Plaintiffs that it had not received the supplemental Donan report.  There is no evidence that Defendant ever sent the supplemental Donan report to Plaintiffs or their claims adjuster or that Ziegenfus considered it before he made his final decision to deny Plaintiffs' claim, even though it was Defendant's practice to note the receipt of such a report in the claims file, send the report to the insured and the insured's claims adjuster, and consider the report in connection with the insured's claim.  (See Ziegenfus Dep. at 69-70, 74-75, 77, 79-83,  89.)  We conclude, based on Defendant's conduct with respect to the supplemental Donan report, that there is a genuine issue of material fact regarding whether Defendant denied Plaintiffs' claim without a reasonable basis and whether Defendant failed to properly investigate Plaintiffs' claim prior to denying it.  See Gold, 880 F. Supp. 2d at 597.

However, since the supplemental Donan report does not unequivocally support Plaintiffs' position that the party wall separation was caused solely by the failure to brace the party wall during and after demolition, we cannot find that Plaintiffs have, at this point, established by clear and convincing evidence that Defendant denied their claim without a reasonable basis.  See Rancosky, 170 A.3d at 365.  Moreover, since Ziegenfus has not admitted that he failed to send copies of the supplemental Donan report to Plaintiffs and their insurance adjuster, or that he failed

to consider the supplemental Donan report when he denied their claim, we cannot find that Plaintiffs have, at this point, established by clear and convincing evidence that Defendant's investigatory practices support a finding of bad faith.   Accordingly, we deny both Defendant's motion for summary judgment and Plaintiffs' cross-motion for summary judgment as to Plaintiff's claim for bad faith in Count I of the First Amended Complaint.

      C.      UTPCPL (Count II)

Count II of the First Amended Complaint alleges a UTPCPL claim based on Plaintiffs' purchase of the Policy from Defendant.   The Policy is titled "Preferred Protection Plan" and Plaintiffs contend that they relied on the representation that they were receiving a "Preferred Protection Plan" when they purchased the Policy.   Plaintiffs contend that Defendant violated the UTPCPL in its sale of the Policy because the Policy contains nothing "Preferred."[2]   Defendant argues that it is entitled to the entry of summary judgment in its favor with respect to Plaintiffs' UTPCPL claim in Count II because Plaintiffs cannot establish that Defendant violated the UTPCPL in connection with its sale of the Policy to Plaintiffs.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."   73 Pa. Stat. § 201-3(a).   Plaintiffs contend that Defendant violated Section 201-2(4)(xxi) of the UTPCPL in connection with the sale of the Policy.   That section defines "[u]nfair methods of competition" and "unfair or deceptive acts or practices" to mean "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."   73 Pa. Stat. § 201-2(4)(xxi).   In order to establish

---

[2] Defendant initially moved to dismiss Count II of the First Amended Complaint.  (See Docket No. 7.)  The parties subsequently entered into a stipulation, which the Court approved, limiting Plaintiffs' UTPCPL claim to "deceptive conduct and statements arising out of the sale – rather than claim handling – of the policy" and denying the Motion to Dismiss the First Amended Complaint as moot.  (See 11/17/22 Stipulated Order (Docket No. 26).)

a violation of the UTPCPL, Plaintiffs must establish that they justifiably relied on misrepresentations made by Defendant.  See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 (3d Cir. 2008) ("The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm."). Defendant argues that it is entitled to summary judgment as to Count II because Plaintiffs cannot establish that they justifiably relied on any misrepresentations made by Defendant in connection with their purchase of the Policy.

Plaintiffs first purchased the Policy from Defendant in 2004.  (Alex Cohen Dep. (Def.'s Mot. for Summary Judg. as to Count II (Docket No. 42) Ex. B) at 13.)  Alex Cohen testified at his deposition that he doesn't remember contacting USAA about buying homeowners insurance.  (Id. at 14.)  He also doesn't recall talking to anyone at USAA about the Policy before he purchased it. (Id. at 14-15.)  He also does not recall whether he spoke to anyone at USAA about different coverages or exclusions under the Policy.  (Id. at 15.)  He also doesn't recall reading the Policy after he received it.  (Id.)  He did not ask anyone at USAA questions about whether any particular losses would be covered under the Policy before he purchased it.  (Id. at 16-17.)  He did not read the renewal policy packets when he received those from USAA.  (Id. at 17.)

Sara Cohen similarly testified at her deposition that she was unable to recall talking to anyone at USAA about the Policy before Alex purchased it.  (Sara Cohen Dep. (Def.'s Mot. for Summary Judg. as to Count II Ex. C) at 14.)  She only remembers that they bought a preferred protection plan policy because they wanted as much coverage as possible.  (Id. at 14-15.)  She does not recall ever asking anyone at USAA what a preferred protection plan policy would cover.  (Id. at 15.)  She also does not recall whether she and Alex contacted any other insurance carriers for

quotes before they purchased the Policy.  (Id. at 16.)  She does not believe that she read the Policy when they first received it from USAA.  (Id.)  She also does not believe that she was given inaccurate information about the Policy before Alex purchased it.  (Id. at 17.)

We find that there is no evidence on the record of this Motion that USAA made any false statements or inaccurate representations to Plaintiffs in connection with Plaintiffs' purchase of the Policy.  Plaintiffs, however, contend that USAA violated the UTPCPL when it sold Plaintiffs a "preferred" homeowners insurance policy "that failed to meet reasonable consumer expectations as to what USAA would readily accept coverage for, such as tortious construction conduct by a next door neighbor."  (Pls.' Br. in Opposition to Def.'s 2d Mot. for Summary Judg. (Docket No. 44) at 7.)  The record evidence regarding the reasons why Plaintiffs purchased the Policy from Defendant does not support the contention that they relied on the "preferred" label when they purchased the Policy.  Alex Cohen testified that he purchased homeowners insurance from USAA for the following reason:

> Well, so I had been a longtime customer of USAA. USAA had handled my car insurance as well as my rental insurance. And, you know, with the proud military history of our family, from my father to my grandfather and many uncles, you know, being a USAA member was a source of pride. I, myself, couldn't serve in the military due to my eyesight, but it was certainly a sense of pride for us. And so knowing that, you know, I had the ability to, you know, have USAA on my own because of the military service of my family, you know. It was -- it was pretty clear that USAA would be our first choice for our first home as well.

(Alex Cohen Dep. at 10-11.)  Sara Cohen similarly explained the reason why she and Alex purchased their homeowner's insurance policy from USAA as follows:  "[w]e chose USAA because of Alex's family history with having USAA and their reputation for taking really good care of their clients. Anybody that knew that we had USAA were like, wow, how did you manage that, you know. And so there wasn't really any other option. We were willing to trust USAA."  (Sara Cohen Dep. at 16.)

18

We find that there is no record evidence to support Plaintiffs' argument that they relied on USAA's labeling the Policy as a "preferred" policy when they purchased it.  Consequently, we conclude that Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact regarding whether they justifiably relied on misrepresentations made by Defendant.  See Hunt, 538 F.3d at 222.  Accordingly, we grant Defendant's motion for summary judgment as to Count II of the First Amended Complaint.

**IV.   CONCLUSION**

For the foregoing reasons, we deny Defendant's motion for summary judgment as to Counts I and III of the First Amended Complaint and also deny Plaintiffs' cross-motion for Summary Judgment as to Counts I and III of the First Amended Complaint.  We grant Defendant's motion for summary judgment as to Count II of the First Amended Complaint.  An order follows.

BY THE COURT:

/s/ John R. Padova
_____

John R. Padova, J.